UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Debora Camp

     v.                       Civil No. 16-cv-110-JL
                                     Opinion No. 2017 DNH 047

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Debora Camp has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits.  An administrative law judge at the SSA ("ALJ") ruled that, despite the severe impairment of Huntington's Disease, Camp retains the residual functional capacity ("RFC") to perform her past relevant work as a director of counseling, and thus is not disabled.  See 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Appeals Council later denied Camp's request for review, see id. § 404.967, with the result that the ALJ's decision became the final decision on her application, see id. § 404.981.  Camp then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Camp has moved to reverse the decision, see L.R. 9.1(b), contending that the ALJ erred:  (1) at step 2 of the process, by improperly dismissing Camp's mental impairments; (2) by failing

to conduct a proper analysis of Huntington's Disease at step 3
of the process; and (3) by failing to consider Camp's mental
impairments when determining her RFC.  The Acting Commissioner
of the SSA has cross-moved for an order affirming the ALJ's
decision.  See L.R. 9.1(e).  After careful consideration, the
court grants the Acting Commissioner's motion to affirm (and
denies Camp's motion to reverse) the ALJ's decision.

## I.   Applicable legal standard

The court limits its review of a final decision of the SSA
"to determining whether the ALJ used the proper legal standards
and found facts upon the proper quantum of evidence." Ward v.
Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The
court will uphold the ALJ's decision if it is supported by "such
evidence as a reasonable mind might accept as adequate to
support a conclusion." Richardson v. Perales, 402 U.S. 389, 401
(1971) (quotations omitted).  Though the evidence in the record
may support multiple conclusions, the court will still uphold
the ALJ's findings "if a reasonable mind, reviewing the evidence
in the record as a whole, could accept it as adequate to support
his conclusion." Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991).

II.  **Background**[1]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Camp's request for disability and disability insurance benefits.  See 20 C.F.R. § 416.920. After determining that Camp had not engaged in substantial gainful activity during the period between the alleged onset of her disability on December 8, 2009, and the date she was last insured, December 31, 2011, the ALJ analyzed the severity of her impairments.  At this second step, the ALJ concluded that Camp had a single severe impairment:  Huntington's Disease.[2]

At the third step, the ALJ found that Camp's severe impairment did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations before the date that she was last insured.  See 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  Specifically, the ALJ reviewed Camp's Huntington's Disease under section 11.17 of 20 C.F.R. Part 404, Subpart P, Appendix 1, and concluded that it did not meet the severity requirements of that listing.[3]

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitation in their Joint Statement of Material Facts (document no. 13) is incorporated by reference.  See L.R. 9.1(d).

[2] Admin. R. at 12.

[3] Admin. R. at 13.

After reviewing the medical evidence of record, Camp's own statements, the opinion of Camp's treating neurologist, Dr. Steven Hersch, the hearing testimony of an impartial medical expert who had reviewed Camp's medical record, Dr. James Haynes, and the opinion of Dr. Lawrence Johnson, who also reviewed the medical record, the ALJ concluded that, as of her date last insured, Camp retained the RFC to perform light work, with the limitation that she "could occasionally perform fine manipulation with her upper extremities."[4]  Finding that, even limited in this manner, Camp was able to perform her past, relevant work as a director of counselling, see 20 C.F.R. § 404.1565, the ALJ concluded his analysis and found that Camp was not disabled within the meaning of the Social Security Act.

## III. **Analysis**

Camp challenges the ALJ's treatment of her alleged mental limitations at three junctures.  First, she contends that the ALJ erred at the second step of the process by failing to conclude that Camp had a severe mental health impairment, despite her complaints of depression and anxiety and a medical expert's explanation that symptoms of Huntington's disease can include progressively declining mental impairments such as agitation, irritability, depression, and disinhibition, among

---

[4] Id. at 14-16.

others.  Second, Camp argues that the ALJ erred at the third step of the process by failing to consider her mental impairments related to Huntington's disease in concluding that her impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Finally, Camp contends that the ALJ erred at step four of the process by crafting an RFC that did not account for Camp's alleged mental impairments.  The court addresses each argument in turn and concludes that the ALJ did not err in any of these analyses.

**A.  Step 2**

"'[A]n individual cannot receive disability benefits . . . unless the individual can establish that the current period of disability began on or prior to the expiration of insured status.'"  Fischer v. Colvin, 831 F.3d 31, 38 n.7 (1st Cir. 2016) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1460–62 (9th Cir. 1995).  At step two of the five-step process, the ALJ determined that Camp had a single severe impairment through her date last insured -- Huntington's Disease.[5]  He noted that, though Camp complained of anxiety and depression[6] as of January 2014, she did not mention these

_____

[5] Admin. R. at 12.

[6] Camp also suggests that the ALJ erred by failing to find that her osteoarthritis and allied disorders were severe impairments

conditions before 2012, when she raised them in connection with a motor vehicle accident and a friend's suicide.[7]  As such, the ALJ concluded, she did not complain of or seek treatment for any mental health impairment during the period between the onset of her disability, December 8, 2009, and her date last insured, December 31, 2011, and accordingly had no severe mental health impairments during that period.[8]

Camp first argues that the ALJ erred in defining the relevant period and considering evidence only within that period.  Because Huntington's disease is progressively degenerative and "affects motor and <u>cognitive</u> abilities <u>as well as mood and behavior</u>,"[9] she argues, the onset date of her mental ailments connected with it -- that is, anxiety and depression -- is ambiguous.[10]  Thus, Camp argues, the ALJ erred by failing to analyze this case as described in Social Security Ruling 83-20,

---

at this step in the process.  <u>See</u> Mem. in Supp. of Mot. to Reverse (doc. no. 10-1) at 14.  She waives this argument, however, by failing to develop it, opting instead to argue on behalf of her mental impairments.  Id.; see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (insufficiently developed arguments are deemed waived).

[7] Admin. R. at 13.

[8] Id.

[9] Mem. in Supp. of Mot. to Reverse (doc. no. 10-1) at 14 (emphasis in original).

[10] See Admin. R. at 14-16.

Program Policy Statement: Titles II and XVI: Onset of Disability
(PPS-100), 1983 WL 31249 (S.S.A. 1983) ("SSR-83-20"), including
by seeking a psychological medical advisor to determine whether
her mental impairments began before December 8, 2008.

The ALJ did not err by failing to call a medical advisor
pursuant to SSR 83-20 when determining the onset date of Camp's
disability.  For disabilities of nontraumatic origin, "[t]he
starting point in determining the date of onset of disability is
the individual's statement as to when disability began.  This is
found on the disability application . . . ."  SSR 83-20, 1983 WL
31249, at *2.  This date "should be used if it is consistent
with all the evidence available."  Id.  In her application, Camp
alleged that she "became unable to work because of [her]
disabling condition on December 8, 2009."[11]  If the claimant
wishes to change her alleged onset date, she may do so "in a
Form SSA-5002 (Report of Contact), a letter, another document,
or the claimant's testimony at a hearing."  SSR 83-20, 1983 WL
31249, at *2.  There is no evidence that Camp attempted to do so
here.

"SSR 83-20 instructs the ALJ to call a medical advisor"
only when "'precise evidence is not available' and thus there is
a 'need for inferences'" to determine the onset date.  Fischer,

---

[11] Admin. R. at 168.

831 F.3d at 35 (quoting SSR 83-20, 1983 WL 31249, at *3).
While, "[a]rguably, every onset determination reached by an ALJ
. . . will involve some degree of ambiguity and inference . . .
there must be some line." Id. (internal citations omitted).  In
Fischer, the First Circuit Court of Appeals concluded that no
ambiguity exists where the medical evidence indicates that the
claimant's symptoms had not reached a disabling level of
severity before the claimant's date last insured. Id. at 35-36.
In such a case, the ALJ's reliance not "upon the absence of
medical evidence but rather [on] the existence of 'precise'
medical evidence . . . eliminated the need for the ALJ to infer
that the [claimant's] onset date preceded her [date last
insured]." Id. at 36.

     So it is here.  The ALJ did, here, find that Camp has a
severe impairment:  Huntington's disease.  Camp received
treatment for that impairment during the period between her
onset date and her date last insured -- records that the ALJ
reviewed and considered.  Camp does not dispute that, with the
exception of one examination in November 2009, the medical
record lacks any indication that Camp sought treatment for, or
even complained of, mental impairments associated with
Huntington's disease[12] before her date last insured, despite her

---

[12] Nor is the court convinced by Camp's characterization of this
examination as suggesting an onset date earlier than that she

medical treatments associated with other aspects of that disease.  Accordingly, because the ALJ's conclusion that Camp had "no medically determinable mental health impairment"[13] before her date last insured is supported by substantial evidence in the record, the ALJ was not obligated to seek advice as to the onset date of Camp's alleged mental impairments from a medical advisor.

**B.   Step 3**

Camp next argues that the ALJ erred by failing to discuss the mental impairments relating to Huntington's disease at step three of the process.  Step three requires the ALJ to determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  Here, the ALJ

---

alleged in her application.  She focuses on the fact that the neurologist observed that Camp was "a pleasant somewhat anxious woman who is [in] near-constant motion," whose "speech is rapid with a scanning quality," and who was "unable to perform serial sevens and . . . add double digit numbers."  Admin. R. at 307. Camp neglects to mention that the neurologist also noted that (1) her "history of abnormal twitching movements dat[ed] back possibly to childhood with a history of restlessness throughout her life," (2) her "mild cognitive issues appear[ed] to be lifelong and well-compensated for," and (3) while "Huntington's disease remains a consideration . . . her symptoms appear to have been with her for virtually her entire life."  Id. at 308.

[13] Id. at 13.

considered whether Camp's Huntington's disease met or medically equaled one of the listed impairments -- specifically, listing 11.17.[14]  Pursuant to that listing, the ALJ must consider whether a claimant with a degenerative disease also has "[d]isorganization of motor function as described in 11.04B; or [c]hronic brain syndrome," which is "evaluate[d] under 12.02." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.17. Relying on "the opinions of "the State agency medical consultants and the testimony of the impartial medical expert at the hearing who evaluated this issue and reached the same conclusion," the ALJ concluded that Camp did not satisfy either of those requirements.[15]

Camp bears the burden at this step of establishing that her impairment met or medically equaled listing 11.17.  Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989).  She appears to argue that the ALJ erred by failing to discuss in more detail whether her Huntington's disease satisfied the requirements for chronic brain syndrome.  However,

---

[14] The ALJ's decision references listing 11.04, which was the listing pertaining to neurodegenerative disorders such as Huntington's disease prior to a September 29, 2016 amendment. As the Commissioner observes, and Camp does not dispute, the ALJ refers to the text now associated with listing 11.17, the listing for degenerative diseases.  See Mem. in Supp. of Mot. to Affirm (doc. no. 14-1) at 10 n.8; Admin. R. at 13-14.

[15] Admin R. at 13-14.

she cites no record evidence to support the argument that, had the ALJ engaged in a deeper analysis on that point, he would have concluded that Camp's Huntington's disease satisfied the requirements of Listing 11.17.  She relies solely on the general description of the disease's initial symptoms as explained by a medical geneticist with whom she met for genetic counseling[16]; she cites no specific evidence in the record to support the proposition that she suffered those symptoms at the relevant time, or that they met or medically equaled chronic brain syndrome.  The court, accordingly, finds no error in the ALJ's analysis at step three.

### C.   Step 4

At step four of the analysis, the ALJ concluded that, as of her date last insured, Camp had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally perform fine manipulation with her upper extremities."[17]  In doing so, he considered Camp's testimony at the hearing, the testimony of Dr. Haynes at the hearing, Camp's medical records during the period between her onset date and her date last insured -- including statements to her neurologist during that time -- and the opinions of Drs. Hersch and Johnson.

---

[16] See Admin. R. at 272.

[17] Id. at 14.

11

As her final argument, Camp contends that the ALJ erred by
failing to include mental functional limitations in her RFC.
Specifically, Camp contends that the ALJ erred in discounting
evidence that she had anxiety and difficulty interacting with
others during the relevant period -- specifically, her own
statements at the hearing, her complaints of anxiety and that
post-dated her date last insured, and a statement from her
husband that she exhibited these symptoms before her onset
date.[18]   The court disagrees.

As to Camp's own statements and complaints, the ALJ is
required "to evaluate the credibility of a claimant's testimony
about her symptoms and their limiting effect in light of all the
other evidence of record, rather than to simply accept the
testimony as true." Scanlon v. Astrue, 2013 DNH 088, 15 n.4.
That determination is entitled to deference, especially when
supported by specific evidence in the case record. Simmons v.
Astrue, 736 F. Supp. 2d 391, 401 (D.N.H. 2010) (citing
Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195
(1st Cir. 1987)). Even though more than one conclusion could be
drawn from the evidence in the record, the ALJ's credibility
determination will be upheld so long as "a reasonable mind,
reviewing the evidence in the record as a whole, could accept it

_____

[18] Mem. in Supp. of Mot. to Reverse (doc. no. 10-1) at 19-21.

as adequate to support [the ALJ's] conclusion." Irlanda Ortiz,
955 F.2d at 769 (quotation marks omitted).

Here, the ALJ's analysis satisfies these requirements.  He
found that Camp's allegations at the hearing of anxiety and
difficulty interacting with people during the relevant period
were not supported by the medical evidence.  Specifically, he
noted that those symptoms were "not reported in her medical
records for the period at issue.  She is consistently reported
to be pleasant, alert and cooperative when she presents for
treatment."[19]  Accordingly, the ALJ did not err in discounting
Camp's testimony as to the effect of the severity of her
symptoms.

Camp does not dispute this characterization of the medical
records for the relevant period.  She argues instead that she
"was minimizing her mental symptoms and . . . was very resistant
to psychological treatment" at that time,[20] and thus that the ALJ
should have taken into account -- and, presumably, based his RFC
finding on -- her complaints of such symptoms made after her
date last insured and statements from her husband that these
symptoms manifested before the alleged onset date.[21]

_____

[19] Admin. R. at 16.

[20] Mem. in Supp. of Mot. to Reverse (doc. no. 10-1) at 20.

[21] Id. at 21-22.

Any failure by the ALJ to relate Camp's later complaints
back to the period before her date last insured -- and the court
is not convinced it was a failure -- would have been harmless.
Camp relies on three reports of such symptoms.[22]  Neither she nor
the providers to whom she made those complaints connected
anxiety or difficulty dealing with others to her Huntington's
disease.[23]  Even had the ALJ taken into account these complaints
of anxiety and a poor mood, in light of the fact that Camp
herself assigned those feelings to other causes, his conclusion
that her complaints of anxiety and difficulty interacting with
people lacked sufficient support in the record to amount to a
functional limitation would still be substantially supported.

Finally, as to Camp's argument that the ALJ erred by
failing to consider her husband's statements concerning symptoms
of mental limitations pre-dating her alleged onset date, for the

---

[22] Mem. in Supp. of Mot. to Reverse (doc. no. 10-1) at 20.

[23] Specifically, on March 9, 2012, Camp reported that she had
"increasing anxiety related to driving" and stress associated
with "a very close friend committing suicide." Admin. R. at
249.  On April 3, 2012, Camp complained of, among other
symptoms, anxiety, feeling "lost," and feeling "squirrely," --
feelings associated with myriad causes, including her friend's
death, adjusting to retirement, and a lack of local social
supports because most of her family was living in North
Carolina. Id. at 247.  Finally, on July 10, 2012, Camp
acknowledged having a very poor mood, particularly after the
death of her friend, but denied memory or anger problems. Id.
at 331.

reasons discussed <u>supra</u> Part III.A, SSR 83-20 did not obligate the ALJ to consider those statements in crafting Camp's RFC.

## IV.  Conclusion

For the reasons discussed herein, the ALJ's conclusion that Camp is not disabled is supported by substantial evidence in the record.  Camp's motion to reverse the SSA's decision[24] is DENIED and the Acting Commissioner's motion to affirm[25] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    March 14, 2017

cc:  Janine Gawryl, Esq.
     Terry L. Ollila, AUSA

---

[24] Document no. 10.

[25] Document no. 14.